IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLAUDIA M. REED,                   *
                                   *
     Plaintiff,                    *
                                   *
vs.                                *   CIVIL ACTION 11-00376-B
                                   *
MICHAEL J. ASTRUE, Commissioner    *
of Social Security,                *
                                   *
     Defendant.                    *

ORDER

Plaintiff Claudia M. Reed ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, et. seq., and 1381, et. seq.   On April 24, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case; and as a result, this action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c). (Docs. 22, 23).   Oral argument was held on April 24, 2012.   Upon careful consideration of the administrative record, the memoranda of the parties, and the representations of counsel at

oral argument, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

I.   <u>**Procedural History**</u>

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 14, 2009.  (Tr. 131-37).  Plaintiff alleges that she has been disabled since May 9, 2009, due to a heart condition and depression.  (<u>Id.</u> at 131, 151, 183).  Her application was denied at the initial stage (<u>id.</u> at 78-82), and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ").  (<u>Id.</u> at 83-84).  On November 22, 2010, Administrative Law Judge Linda Helm held an administrative hearing, which was attended by Plaintiff, her attorney, and vocational expert Jody Skinner.  (Tr. 32-63).  On December 9, 2010, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (<u>Id.</u> at 13-31).  Plaintiff's request for review was denied by the Appeals Council ("AC") on May 27, 2011.  (<u>Id.</u> at 1-4, 9-12).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

II.  <u>**Issues on Appeal**</u>

A.   Whether the ALJ erred by improperly evaluating the opinions of Plaintiff's treating physicians, Dr. Hardy and Dr. Sharpe?

2

     B.    Whether the ALJ erred by failing to order a consultative cardiac examination?

     C.    Whether the ALJ erred in finding that Plaintiff retained the RFC to perform light work?

## III. **Factual Background**

Plaintiff was born on March 1, 1976, and was 34 years old at the time of the administrative hearing. (Tr. 37, 64, 66). She earned her GED and has worked in the past as a day care worker, fast food worker, and cashier/checker. (Id. at 25, 38, 42, 152, 176, 201). Plaintiff reported that she stopped working due to chest pains, numbness in her hands, and swelling. (Id. at 151). Plaintiff also reported that since she experienced a heart attack, she "stay[s] out of breath all the time", and that she experiences shortness of breath and tightness in her chest when walking short distances or standing for thirty minutes. (Id. at 44-49). Plaintiff indicated that she does not have any problems sitting. (Id. at 49). Plaintiff also testified that she is not receiving any treatment for her alleged depression. (Id. at 47).

According to Plaintiff, she is able to drive, clean her house, take care of her two children, aged 15 years and 16 months, and handle her finances. (Id. at 51-52). Plaintiff testified that she stays home a lot because it is a big job for her to lift her baby in and out of his car seat. (Id.).

3

IV.  **Analysis**

A.  **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court  may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131

---

[1] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

(11th Cir. 1986); Short v. Apfel, 1999 U.S.  Dist. LEXIS 10163 (S.D. Ala. 1999).

### B.  Discussion

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. § 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. § 404.1520, 416.920.[2]

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove (Continued)

In the case sub judice, the ALJ determined that Plaintiff met the non-disability requirements for disability insurance benefits through December 31, 2013.  (Tr. 18).  The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date and that she has the severe impairments of coronary artery disease, ischemic cardiomyopathy, chronic obstructive pulmonary disease, and asthmatic bronchitis. (Id.).  The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listings  contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  (Id. at 19).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform less than a full range of light work, that Plaintiff can stand/walk for no more than thirty minutes at a time and for no more than two hours in an eight-hour workday, that she can sit for six hours

---

at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th  Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

in an eight-hour workday, and that she can lift/carry up to twenty pounds occasionally and ten pounds frequently. The ALJ found that Plaintiff is unable to climb ladders, scaffolds, or ropes, that she cannot work at unprotected heights or around dangerous equipment, that she is unable to work in temperature extremes or humidity and wetness, and that she cannot tolerate exposure to concentrated environmental pollutants. (Id. at 20).

The ALJ next determined that Plaintiff has some credible limitations resulting from the shortness of breath and other symptoms related to her respiratory and cardiac impairments, but her statements concerning her impairments and their impact on her ability to work are considerably more limited and restricted than is established by the record as a whole. (Id. at 22-23). The ALJ concluded that Plaintiff's RFC precludes her from performing any of her past relevant work and that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy. (Id. at 25-26). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 26-27).

The relevant evidence of record reflects that Plaintiff was admitted to Providence Hospital on May 9, 2009, with burning in

her chest that radiated up into her neck, and dyspnea.[3] (Tr. 203).  On initial exam and laboratory workup, she showed evidence of non-Q wave myocardial infarction and was subsequently admitted. (Id. at 206-07).  Plaintiff underwent balloon angioplasty of the left anterior descending, and due to severe diffuse disease from the midpoint on, she underwent placement of four Cypher stents without residual stenosis. Plaintiff was provided aspirin, Plavix, beta blockers, angiotensin-converting enzyme inhibitors, and statins. At discharge, Plaintiff was diagnosed with non-ST segment elevation myocardial infarction secondary to mid occlusion in the left anterior descending artery; four cypher stents to the mid and distal left anterior descending artery; ischemic cardiomyopathy, ejection fraction of 35%; status post vaginal delivery two weeks prior; and tobacco use. She was directed to follow up with Dr. Dale Hardy's office in two weeks.  (Id. at 203-04).

The record includes treatment notes from W. Dale Hardy, M.D. (hereinafter "Dr. Hardy") at Mobile Heart Specialists from June 16, 2009 through March 16, 2010.  (Id. at 240-77; 286; 288).  After her initial inpatient treatment for non-ST segment

_____

[3] Dyspnea is most frequently described as shortness of breath, inability to take a deep breath, or chest tightness. See http://www.ncbi.nlm.nih.gov/pubmed/21250198 (last visited September 28, 2012).

elevation myocardial infarction, Plaintiff followed up with Dr. Hardy on June 16, 2009.  Plaintiff reported that her medications made her feel "crazy,", that she has some numbness in her fingers, that she has some shortness of breath and that she was easily fatigued.  (Id. at 244-45).  Plaintiff also reported that she has not smoked since her heart attack.  (Id.).  Dr. Hardy explained that fatigue and "feeling crazy" are not side effects of aspirin or Plavix.  So he advised Plaintiff not to discontinue the use of those medications.  (Id. at 245).  He further explained that Plaintiff's symptoms could come from Pravastatin or Lisinopril, and directed her to stop taking Lisinopril for a week to see if her symptoms resolved and if they did not, to restart the Lisinopril and repeat the process by stopping the Pravastatin.  (Id.).

The July 17, 2009 treatment notes reflect that Plaintiff reported that she was feeling better, that she did not stop any of her medicines and that all of her symptoms resolved.  She also reported some burning and tingling in her chest but denied any actual chest pain or pressure, exertional symptoms, shortness of breath, palpitations, or syncope.  Dr. Hardy observed that Plaintiff had some mild transaminase elevation in her lab work.  Plaintiff was directed to continue with pravastatin, lisinopril, aspirin, and Plavix.  (Id. at 241-42).

On September 10, 2009, Plaintiff presented to the Emergency Room at Providence Hospital complaining of chest pain. (Id. at 247-65). An x-ray of Plaintiff's chest was taken and revealed normal heart with clear lung functions. (Id. at 258). A nuclear stress test with angina was performed and showed a large severe predominately fixed defect in the mid to distal anterior and anterior septal, apical and distal inferior walls consistent with transmural scar and mildly depressed left ventricular systolic function with regional motion abnormalities with an ejection fraction of 40%. (Id. at 255).

On exam, Plaintiff had an abnormal heart rhythm, which was determined to be artifact and not ventricular tachycardia. Plaintiff's labwork, including cardiac markers, were negative for injury, and her brain natriuretic peptide[4], amylase, and lipase tests were all normal. Plaintiff's serum glutamic-oxaloacetic transminase and serum glutamic-pyruvic levels were mildly elevated. The notes also reflect that Plaintiff was continuing to smoke. The burning in her chest was diagnosed as acid reflux, and she was directed to take over-the-counter

_____

[4] A brain natriuretic peptide (BNP) test measures the amount of the BNP hormone in your blood. BNP is made by your heart and shows how well your heart is working. See http://www.webmd.com /heart-disease/brain-natriuretic-peptide-bnp-test (last visited September 28, 2012).

Prilosec for at least 2 to 3 weeks.  Plaintiff was discharged the following day.  (Id. at 248).

Phillip W. Lambert, a single decision-maker ("SDM") with the Agency, completed a physical RFC assessment dated October 27, 2009.  Mr. Lambert assessed Plaintiff with coronary artery disease, ischemic cardiomyopathy, ejection fraction equals 40%, and fatigue.  He opined that Plaintiff could occasionally and frequently lift 10 pounds, stand and/or walk about 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull for an unlimited amount of time.  Additionally, Mr. Lambert opined that Plaintiff has no limitations in manipulative, visual, or communicative ranges, that she can occasionally climb ramps/stairs, and that she can never climb ladder/rope/scaffolds.  He also opined that Plaintiff should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, and poor ventilation as well as all exposure to hazards such as machinery and heights.  (Id. at 68-75).

The record includes a letter written by Dr. Hardy and dated December 10, 2009.  In it, Dr. Hardy notes that he has treated Plaintiff since her heart attack, and that aside from the chest pain she experienced in September 2009, which was attributed to acid reflux, she has not reported any chest pain.  Dr. Hardy indicates that Plaintiff has a decrease in her left ventricular

function but no symptoms of heart failure, and that Plaintiff's right distal coronary artery has a lesion, which is relatively severe, but is in a small vessel and is medically treatable. He further notes that in Plaintiff's July 17, 2009 office visit, she was not symptomatic from a cardiac standpoint. He observed that she "probably does have some decrease in her functional capacity from her reduction in her left ventricular function at 35-40%, which is documented on several cardiac studies. If being considered for disability, she may require a formal disability evaluation, which we are unable to provide at this point." (Id. at 270).

Dr. Hardy's treatment notes dated January 12, 2010 reflect that Plaintiff reported shortness of breath and fatigue. She also reported dyspnea on exertion with moderate activity and that she "just gives out." She denied paroxysmal nocturnal dyspnea[5], orthopnea, palpitations, or syncope. In the notes, Dr. Hardy states that Plaintiff had these symptoms on her last visit and was scheduled for an x-ray and a brain natriuretic peptide (BNP) test; however, due to transportation issues, she did not have the tests. On exam, Plaintiff was well-developed and well-

---

[5] Paroxysmal nocturnal dyspnea, or "PND," is a sensation of shortness of breath that awakens the patient, often after one or two hours of sleep, and is usually relieved in the upright position.  See http://www.ncbi.nlm.nih.gov/books/NBK213/ (last visited September 28, 2012).

nourished in no acute distress. Her lungs were clear. According to the notes, Plaintiff questioned whether her "shortness of breath with exertion" was the result of being out of shape or overweight given that she weighted 164 pounds in July 2009 and was now weighing 186 lbs. Dr. Hardy opined her weight gain was probably attributed to the fact that she had stopped smoking. She was again directed to have an x-ray and BNP test performed, and the records reflect that she did so. (Id. at 266-67; 274-75).

During Plaintiff's March 16, 2010 office visit, she again reported shortness of breath, but denied any chest pain. Dr. Hardy noted that the chest x-ray and BNP tests were normal and showed no evidence of heart failure, that Plaintiff's pulmonary vascularity was normal, and that her lungs were clear of acute infiltrates. Additionally, Plaintiff's cardiac silhouette was normal in size. Dr. Hardy decided to continue Plaintiff on Plavix although she would have normally come off of it in May 2010, which is one year from her surgery. He opined that Plaintiff was being provided Plavix at no charge, and it was reasonable to continue her on it considering that she has multiple stents. (Id. at 271-72).

Dr. Hardy's treatment notes dated September 28, 2010 reflect that Plaintiff reported that she was no longer taking her beta-blocker, ace-inhibitor, and statin because they were

13

making her sick. Specifically, Plaintiff stated that her medications were making her forgetful and that she felt better after she ceased taking them. She denied chest pain and reported that her breathing has gotten significantly better since she started exercising on a regular basis. Dr. Hardy noted that Plaintiff's weight was unchanged since her last visit. He discontinued Plavix since her heart attack was over a year ago, but instructed her to continue to take an aspirin a day. He also informed Plaintiff that forgetfulness is not a typical side effect of Lisinopril, Lopressor, or Pravastatin, and he recommended that Plaintiff start taking the medicines again, one at a time, at one to two week periods, to see if her symptoms reoccur. He explained to her the benefits of these medications in the reduction of cardiac events. She was directed to follow up in six months. (Id. at 286, 288).

Plaintiff was treated by Thomasina Sharpe, MD (hereinafter "Dr. Sharpe") at the Mobile County Health Department on April 19, June 7, and October 13, 2010. (Id. at 278-87). Treatment notes dated April 19, 2010 reflect that Plaintiff reported shortness of breath with exertion, but not at night. Plaintiff also reported that she used a relative's inhaler, which improved her shortness of breath. She reported no chest pain, discomfort, congestion, or palpitations. On exam, she had normal heart rate, rhythm and heart sounds, and no murmurs or

edema were noted. Plaintiff was assessed with chronic obstructive pulmonary disease and provided Ventolin HFA CFC free 90 mcg/inh inhaler, Flovent HFA CFC free 110 mcg/inh inhaler, and Albuterol PRN. (Id. at 281-83).

During a June 7, 2010 office visit with Dr. Sharpe, Plaintiff continued to report shortness of breath with or without exertion, that she was taking multiple cardiac medications, and that she forgets to take her medications often. On exam, Plaintiff appeared in acute distress. Plaintiff was informed that she was not a good candidate for birth control. (Id. at 278-80, 284-85).

Dr. Sharpe's treatment notes dated October 14, 2010 reflect that Plaintiff reported shoulder and neck pain lasting a week. She also reported that she felt like she had "slept wrong." On exam, Plaintiff was in no acute distress. Respiration rhythm and depth were normal, and no wheezing or rales/crackles were heard. Spasm over Plaintiff's trapezius muscle was observed, and Plaintiff had full range of motion, with pain, in the shoulders. Plaintiff was educated about pain management, and she was prescribed Naprosyn 500 mg and Flexeril 10 mg. (Id. at 289-92).

The record includes a letter from Dr. Sharpe, dated October 14, 2010, and addressed to "whom it may concern." In the letter, Dr. Sharpe advised that: "[Plaintiff] has Coronary

Artery Disease and earlier this year she suffered a Myocardial infarction and had stents placed in her coronary arteries. She also suffers from Chronic Obstructive Pulmonary Disease and Asthmatic Bronchitis." (Id. at 287).

### Whether the ALJ erred by failing to order a consultative cardiac examination.

Plaintiff argues that the ALJ erred by failing to order a consultative cardiac exam to determine the severity of and limitations resulting from her cardiac impairments, which include coronary artery disease and ischemic cardiomyopathy. Specifically, Plaintiff notes that Dr. Hardy's opinion indicated Plaintiff needed a formal disability evaluation. (Doc. 13). The Commissioner responds that the ALJ considered the medical opinions in the record and is permitted to issue a decision without obtaining additional evidence so long as the record as a whole provides a sufficient basis to make an informed disability decision. (Doc. 20).

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and for producing evidence in support of his claim while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253,

1269 (11th Cir. 2007).  This duty to develop the record exists
even when the claimant is represented by counsel.  Brown v.
Shalala, 44 F.3d 931, 934 (11th Cir. 1995).  Indeed, applicable
Social Security regulations provide that the Commissioner will
pay the reasonable cost of providing existing medical records
the Commissioner needs or requests.  Hargove v. Astrue, 2012
U.S. Dist. LEXIS 69821, *31 (N.D. Fla. Mar. 15, 2012).  The
ALJ's duty to develop the record is triggered when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  Strawder v. Astrue, 2011
U.S. Dist. LEXIS 122843, *20 (N.D. Fla. Aug. 8, 2011).

The responsibility for determining a plaintiff's RFC[6] lies
with the ALJ and is based on all of the evidence of record.  See
Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (ALJ
has duty to assess the residual functional capacity on the basis
of all the relevant credible evidence of record); 20 C.F.R. §§
404.1546, 416.946  (responsibility for determining a claimant's
residual functional capacity lies with the ALJ).  See also Foxx
v. Astrue, 2009 U.S. Dist. LEXIS 80307, *17 (S.D. Ala. August

---

[6]  "Residual functional capacity, or RFC, is a medical
assessment of what the claimant can do in a work setting despite
any mental, physical or environmental limitations caused by the
claimant's impairments and related symptoms. 20 C.F.R. §
416.945(a)."  Peeler v. Astrue, 400 Fed. Appx. 492, 494 n.2
(11th Cir. 2010).

27, 2009)("The RFC assessment must be based on all of the relevant evidence in the case such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and medical source statements."), citing  SSR 96-8p, 1996 SSR LEXIS 5.

In Siverio v. Commissioner, 461 Fed. Appx. 869, 871 (11th Cir. 2012), a panel of the Eleventh Circuit recently discussed the ALJ's duty with respect to the RFC assessment, and held that the ALJ erred when he treated, as a medical opinion, the RFC assessment prepared by a single decision maker.  The court held that the error was not harmless because the remaining evidence did not provide substantial evidence that the plaintiff was capable of performing "medium work".

In the instant case, the ALJ, in discussing Plaintiff's functional limitations, and the records of Plaintiff's treating physicians, stated as follows:

> As for the opinion evidence, Dr. Hardy and Dr. Sharpe submitted letters concerning the claimant's impairments; however, they did not offer an opinion as to the claimant's specific limitations resulting from the impairments. Dr. Sharpe noted the claimant's diagnoses, but did not offer an opinion regarding the claimant's limitations (Exhibit 10F). Dr. Hardy noted that the claimant's cardiac condition is stable, but "She probably does have some decrease in her functional capacity" because of the cardiac impairments (Exhibit 6F). This opinion,

although vague, is consistent with the
record as a whole and is given some weight.
Consequently, I have provided for a decrease
in the claimant's functional capacity as a
result of the severe impairments.

There are no medical opinions in the record
that contradict the stated residual
functional capacity.

(Tr. 25).

The undersigned finds that substantial evidence does not
support the ALJ's RFC assessment. First of all, while neither
of Plaintiff's treating physicians offered an opinion regarding
any functional limitations, Dr. Hardy did not simply state that
Plaintiff probably does have some decrease in her functional
capacity because of her cardiac impairments, as stated in the
ALJ's opinion. Instead, he noted that the reduction in
Plaintiff's left ventricular function at 35-40% is documented on
several cardiac studies, and that if she was being considered
for disability, she may require a formal disability evaluation.
(Tr. at 270). Secondly, the ALJ opted not to have a
consultative evaluation although the only functional assessment
in the case was rendered by Phillip Lambert, who the
Commissioner acknowledges is a single decision maker[7] and as

---

[7] Notably, the RFC developed by the ALJ closely resembles
the functional assessment completed by Mr. Lambert except that
Mr. Lambert opined that Plaintiff is limited to lifting and
carrying 10 pounds, whereas the ALJ found that Plaintiff can
lift and carry 20 pounds.

such, does not qualify as a medical expert.  Interestingly however, in his assessment, Mr. Lambert opined that Plaintiff is limited to lifting and carrying 10 pounds.  Third, the ALJ's finding that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently is not supported by substantial evidence.  In finding that Plaintiff can lift 20 pounds, the ALJ noted that Plaintiff testified that she does not leave home a lot because she has difficulty lifting her then 16 month old son in and out of his car seat, that according to the Center for Disease Control and Prevention, the weight for a 16 month old boy in the 50th percentile is twenty-five pounds, that Plaintiff attributed her lifting difficulties to shoulder problems that are expected to resolve within twelve months, and because she cares for the child independently, she can lift and carry up to twenty pounds occasionally.  The undersigned finds that the ALJ's finding is not supported by substantial evidence.  There is no evidence regarding the expected duration of Plaintiff's shoulder problem, and the fact that she is able to care for the child independently does not establish Plaintiff's lifting strength.  This is particularly true given Plaintiff's coronary disease, her complaints of shortness of breath, her testimony that she rarely leaves home due to difficulties lifting the child in and out of the car seat and her physician's opinion that she probably has some decrease in her functional capacity

due to her coronary disease.   Because substantial evidence does not support the RFC finding, this case must be reversed and remanded for reconsideration of Plaintiff's RFC.[8]

**V.   Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record, memoranda of the parties and arguments at oral argument, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income is **REVERSED** and **REMANDED**.

**DONE** this **28th** day of **September, 2012**.

                                   /s/ SONJA F. BIVINS
                         **UNITED STATES MAGISTRATE JUDGE**

---

[8]  Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on the Plaintiff's second claim, there is no need for the Court to address Plaintiff's other claims.   See Robinson v. Massanari, 176 F. Supp. 2d 1278, 1280 and n.2 (S.D. Ala. 2001); Pendley v. Heckler, 767 F.2d 1561, 1563 (llth Cir. 1985)("Because the 'misuse of the expert testimony alone warrants reversal' we do not consider the appellant's other claims.") (citations omitted).